## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **ALLIED WORLD ASSURANCE COMPANY, LTD.,** | **MEMORANDUM DECISION AND ORDER** |
| **Petitioner,** | |
| **v.** | **Case No. 2:17-cv-01188-RJS-JCB** |
| **BANK OF UTAH, in its capacity as Owner Trustee of the MSN53519 and MSN5320 Trusts,** | **Chief District Judge Robert J. Shelby** |
| **Respondent.** | **Magistrate Judge Jared C. Bennett** |

Chief District Judge Robert J. Shelby referred this case to Magistrate Judge Jared C.

Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is the issue of whether to impose

sanctions against counsel for Petitioner Allied World Assurance Company, Ltd. ("Allied") under

28 U.S.C. § 1927. Based upon the analysis set forth below, the court imposes § 1927 sanctions

against Allied's counsel and in favor of Respondent Bank of Utah in its capacity as Owner

Trustee of the MSN53519 and MSN5320 Trusts ("Bank of Utah as Trustee"). The court further

orders Allied's counsel to brief the issue of the amount of the § 1927 sanctions award.

### BACKGROUND

This action is based upon an arbitration award of attorney's fees entered in favor of Allied

and against Bank of Utah as Trustee ("Arbitration Award"), which resulted from arbitration of

---

[1] ECF No. 24.

the parties' dispute over an insurance contract. The disputed insurance policy provided that the "[i]nsureds" included "Bank of Utah" "[i]n its capacity as Owner/Trustee."[2] Further, the insurance policy required that service of notices under the policy be made on Bank of Utah's "Corporate Trust Services."[3] Not surprisingly, the Arbitration Award identified "Bank of Utah (in its capacity as Owner Trustee of the MSN53519 and MSN53520 Trusts)" as a claimant participating in the arbitration proceeding.[4] Bank of Utah in its individual capacity is not mentioned in either the underlying insurance policy or the Arbitration Award.

Following the Arbitration Award, Allied initiated this action in the District of Utah to enforce the Arbitration Award against "Bank of Utah."[5] Although Allied's motion to enforce indicated that the Arbitration Award was entered against Bank of Utah as Trustee,[6] the motion did not specify whether Allied sought to enforce the Arbitration Award against Bank of Utah in its individual corporate capacity or against Bank of Utah as Trustee.

Subsequently, Bank of Utah, in its individual capacity, filed a motion to dismiss or, in the alternative, to transfer venue.[7] Bank of Utah sought dismissal of Allied's motion to enforce for two reasons: (1) the Arbitration Award was entered against Bank of Utah as Trustee and not against Bank of Utah in its individual capacity; and (2) Utah law precluded enforcement of the

---

[2] ECF No. 2-1 at 4 of 18.

[3] ECF No. 2-1 at 13 of 18.

[4] ECF No. 2-2 at 5 of 180. Although the Arbitration Award identifies the "MSN53520" Trust, the parties refer to the "MSN5320" Trust. The court assumes that the difference between the two references is a scrivener's error in either the Arbitration Award or the parties' briefing.

[5] ECF No. 2.

[6] *Id*. at 1.

[7] ECF No. 4.

Arbitration Award against Bank of Utah in its individual capacity. In support of the second

reason, Bank of Utah relied upon Utah Code Ann. § 75-7-1010 and a Tenth Circuit case, *Ace*

*Investors, LLC v. Rubin*.[8] As an alternative to dismissal, Bank of Utah sought transfer of venue to

the Southern District of New York.

Chief Judge Shelby denied Bank of Utah's motion on April 26, 2018, stating:

> Bank of Utah asks the court to dismiss Allied's Motion to Enforce because Allied initiated the action against Bank of Utah in its individual capacity rather than its capacity as trustee. Bank of Utah argues Utah law dictates that it cannot be held liable in its individual capacity for the [A]rbitration [A]ward.

> Allied's Motion to Enforce does not specify whether it seeks enforcement against Bank of Utah in its individual capacity or its capacity as a trustee. However, the Motion to Enforce notes that the arbitration involved Bank of Utah in its capacity as a trustee. Nothing in the Motion to Enforce supports the inference that Allied is seeking judgment against Bank of Utah in its individual capacity. Thus, the court will construe the Motion to Enforce as directed against Bank of Utah in its capacity as a trustee.

> Because the court concludes the Motion to Enforce has been brought against the correct party, Bank of Utah's Motion to Dismiss or, in the Alternative, to Transfer Venue is DENIED. If Bank of Utah intends to respond to the Motion to Enforce with any of the defenses set out in the Federal Arbitration Act, it must do so within 21 days of this Order.[9]

Bank of Utah as Trustee responded to Allied's motion to enforce by stating that it would

not assert any defenses set forth in the Federal Arbitration Act.[10] Nevertheless, the response

specifically stated: "In light of the fact that [Allied's motion to enforce] does not seek to impose

---

[8] 494 F. App'x 856 (10th Cir. 2012).

[9] ECF No. 11 at 2 (footnote omitted).

[10] ECF No. 12.

judgment against Bank of Utah [in its individual capacity], and the [c]ourt's recognition of the same, this response is being filed by Bank of Utah in its capacity as Owner Trustee of the MSN53519 and MSN5320 Trusts."[11] The response further stated that "[n]o response is required from Bank of Utah in its individual capacity and no response is being given by Bank of Utah in its individual capacity because the Motion to Enforce does not seek to impose judgment against Bank of Utah in its individual capacity."[12]

On May 25, 2018, Chief Judge Shelby granted Allied's motion to enforce and directed it to submit a proposed judgment.[13] Despite Chief Judge Shelby's prior ruling, Allied submitted a proposed judgment that did not specifically indicate that the judgment was against only Bank of Utah as Trustee.[14] Instead, the proposed judgment indicated that it was against "Bank of Utah."[15]

Bank of Utah as Trustee filed a response to Allied's proposed judgment, arguing that the proposed judgment was misleading because it could suggest that the judgment was against Bank of Utah in its individual capacity.[16] Bank of Utah as Trustee submitted its own proposed judgment indicating that the judgment was against only Bank of Utah as Trustee.[17]

Undeterred, Allied filed a reply in which it argued that the court had never determined that the judgment "may only be satisfied by trust assets" or that Bank of Utah's individual,

---

[11] *Id*. at 2.

[12] *Id*.

[13] ECF No. 13.

[14] ECF No. 14.

[15] *Id*. at 1, 3.

[16] ECF No. 15.

[17] *Id*. at 6-8 of 12.

non-trust assets "are not subject to enforcement" of the judgment.[18] Allied asserted that the judgment "should make clear that there has been no determination that non-trust assets of the Bank of Utah cannot be used to satisfy the [j]udgment."[19] Allied further maintained that "the Bank of Utah assets against which the [j]udgment may be enforced is not, and should not be, limited to assets held in the trusts."[20] Allied also addressed several of the arguments raised in Bank of Utah's motion to dismiss or, in the alternative, to transfer venue—namely, Bank of Utah's arguments under Utah Code Ann. § 75-7-1010 and *Ace Investors*.[21] In its ultimate request for relief, Allied asked that the court "rule that Allied . . . is not constrained to enforce the [judgment] only against assets of the Bank of Utah held or traceable to the subject trusts" and argued that Allied "should be permitted to enforce the [j]udgment against available non-trust assets of Bank of Utah."[22]

Chief Judge Shelby entered a judgment on June 22, 2018 ("Judgment").[23] The Judgment stated that Allied's motion to enforce was brought against "Bank of Utah in its capacity as Owner Trustee of the MSN53519 and MSN5320 Trusts."[24] Thus, the Judgment stated that it was "entered in this matter in favor of [Allied] against . . . Bank of Utah in its capacity as Owner

---

[18] ECF No. 16 at 2 of 6.

[19] *Id*.

[20] *Id*.

[21] *Id*. at 2-3 of 6.

[22] *Id*. at 5 of 6.

[23] ECF No. 18.

[24] *Id*. at 1.

Trustee of the MSN53519 and MSN5320 Trusts."[25] Conspicuously absent from the Judgment is any reference to the Judgment being entered against Bank of Utah in its individual capacity.

On March 7, 2022, over three years after the Judgment was entered, Allied applied for a writ of execution against "Bank of Utah" and represented to the court that Allied was permitted to execute on any assets "held by Bank of Utah as the judgment debtor."[26] The Clerk of Court issued the writ of execution ("Writ") the same day, which commanded "Bank of Utah" to turn over $417,880.35.[27]

On August 11, 2022, after Allied had served Bank of Utah as Trustee's counsel with the Writ,[28] Bank of Utah as Trustee filed a motion requesting an in-person hearing and objecting to the Writ.[29] Presumably in response to Bank of Utah as Trustee's argument that the Writ was not properly served, Allied subsequently served Bank of Utah as Trustee with the Writ on August 17, 2022,[30] which prompted a second motion from Bank of Utah as Trustee requesting an in-person hearing and objecting to the Writ.[31]

The court held a hearing on Bank of Utah as Trustee's motions on August 25, 2022.[32] Given (1) Chief Judge Shelby's prior ruling that Allied's motion to enforce was directed against

---

[25] *Id*. at 3.

[26] ECF No. 19 at 1-2.

[27] ECF No. 20.

[28] ECF No. 25.

[29] ECF No. 22.

[30] ECF No. 26.

[31] ECF No. 29.

[32] ECF No. 31.

only Bank of Utah as Trustee, and (2) his entry of the Judgment against only Bank of Utah as

Trustee, the court questioned Allied's counsel extensively during the hearing about the legal

authority upon which Allied was relying to collect on any non-trust assets held by Bank of Utah

in its individual capacity.

At the outset of the hearing, the court stated its belief that the Judgment clearly indicated

that only Bank of Utah as Trustee was liable.[33] Allied's counsel responded by stating his position

that the language of the Judgment did "not limit the possibility that any outside trust assets could

be used to satisfy the [J]udgment."[34] The court then asked Allied's counsel to provide the legal

theory that would allow Allied to enforce the Judgment against any assets other than those held

by Bank of Utah as Trustee.[35] Allied's counsel responded by arguing that Utah law did not apply

to the enforcement of the Judgment because the arbitration underlying the Arbitration Award

occurred in London.[36] Consequently, the court asked Allied's counsel whether he believed

British law applied to enforcement of the Judgment, to which he replied: "Yes, it may, yeah."[37]

The court then asked Allied's counsel twice for the authority under British law that would permit

Allied to enforce the Judgment against any assets other than those held by Bank of Utah as

Trustee.[38] Allied's counsel responded to both questions by stating: "I don't have that in front of

---

[33] ECF No. 35 at 4:11 to 6:10

[34] *Id*. at 6:15-17.

[35] *Id*. at 6:25 to 7:1.

[36] *Id*. at 7:7-12; 7:22-25.

[37] *Id*. at 8:3-5.

[38] *Id*. at 8:6-16; 9:8-16.

me . . . ."[39] The court followed that line of questioning by reminding Allied's counsel that, as the party seeking to enforce the Writ, Allied had the burden of establishing its right to the property upon which it was seeking to execute the Judgment.[40] The court then asked Allied's counsel, given that he was relying upon British law, for the legal basis for filing a writ of execution under British law.[41] Allied's counsel again responded: "I don't have that with me."[42]

The court then turned to Allied's counsel's next argument, which was that the statutory provision upon which Bank of Utah as Trustee was relying to resist enforcement of the Judgment against non-trust assets—Utah Code Ann. § 75-7-1010—did not apply in this case.[43] Specifically, Allied's counsel pointed to subsection (1) of that statute, which provides: "Except as otherwise provided in the contract, a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administering the trust if the trustee in the contract disclosed the fiduciary capacity."[44] Allied's counsel argued that this statutory provision did not apply in this case because Allied was "not seeking to hold Bank of Utah liable on a contract" but was instead was "seeking . . . the enforcement and the granting of [the Writ] for" the Judgment.[45] The court then asked Allied's counsel whether the arbitration

---

[39] *Id*. at 8:17-18; 9:17-18.

[40] *Id*. at 9:19-22.

[41] *Id*. at 10:5-7.

[42] *Id*. at 10:8-9.

[43] *Id*. at 10:10-13.

[44] Utah Code Ann. § 75-7-1010(1).

[45] ECF No. 35 at 10:19-22; *see also id*. at 11:2-5 ("75-7-1010 . . . doesn't apply here because there is no contract here. We're looking at [the] [J]udgment that was already executed, that was already rendered against Bank of Utah.").

underlying the Arbitration Award "was based on a contract."[46] Allied's counsel agreed,[47] which prompted the court to inquire whether the issue "really is a contract issue."[48] Allied's counsel responded by arguing, in essence, that the Arbitration Award for attorney's fees was separate from the insurance contract that was the subject of the arbitration.[49]

The court then asked Allied's counsel: "[W]hat law applied to the decision of whether the attorney's fees are pursuant to the contract? Would it be Utah law or British law?"[50] After Allied's counsel argued that Utah law should apply,[51] the court asked Allied's counsel whether his position was "that Utah law on this contract would say these attorney's fees are independent of the contract."[52] Allied's counsel reiterated position that section Utah Code Ann. § 75-7-1010 did not apply because the Arbitration Award was "a final judgment," which was "something separate" from the contract.[53]

When the court asked Allied's counsel to elaborate on that point, he stated that he had "other statutes that [he thought] allow[ed] the judge to have discretion to award the[] attorney's fees and have [the Judgment] be enforced here against Bank of Utah in [its] individual capacity."[54] Allied's counsel went on to state:

---

[46] *Id*. at 12:4-5.

[47] *Id*. at 12:6.

[48] *Id*. at 12:15.

[49] *Id*. at 12:16-24.

[50] *Id*. at 12:25 to 13:2.

[51] *Id*. at 13:3-5.

[52] *Id*. at 13:9-10.

[53] *Id*. at 13:11-13.

[54] *Id*. at 14:3-6.

> [T]he trust assets are empty, um, and we think that that was done in
> the middle of the arbitration. This hasn't been alleged previously,
> but what we -- I have a theory that that that, um, loss of trust funds
> during the arbitration thereby making them judgment proof because
> the trust assets are empty, they're gone, they're depleted, that is --
> that has prejudiced my client Allied . . . and so that's a reason to be
> able to go and if the trust has senti [sic] then we should be able to
> move on to Bank of Utah in its individual capacity.[55]

The court responded by asking whether "the solution [was] to file a fraudulent transfer

action as opposed to trying to take assets."[56] The court stated that it was "unaware under Utah

law or any law for that matter, that basically allow[s] [Allied] to get substitute assets from some

-- from some non-trust source."[57] After noting that Allied had not taken that course to prove a

fraudulent transfer,[58] the court further inquired: "[W]hat allows you at this stage, under the

context of the [W]rit . . . , to get non-trust property without first having to prove the fraudulent

transfer?"[59] Allied's counsel responded by arguing that the Arbitration Award was for attorney's

fees as distinguished from a substantive award on the merits of the arbitration.[60] Therefore,

according to Allied's counsel, the court could somehow award attorney's fees to Allied from

Bank of Utah in its individual capacity under Utah Code Ann. § 75-7-1004(1),[61] which provides:

"In a judicial proceeding involving the administration of a trust, the court may, as justice and

equity may require, award costs and expenses, including reasonable attorney's fees, to any party,

---

[55] *Id*. at 14:7-17.

[56] *Id*. at 14:18-20.

[57] *Id*. at 14:20-22.

[58] *Id*. at 15:8-9.

[59] *Id*. at 15:11-14

[60] *Id*. at 15:15-20.

[61] *Id*. at 16:9-25.

to be paid by another party or from the trust that is the subject of the controversy." Allied's counsel admitted that this "isn't the exact application of these sort of statutes" but was "still an example of where [the court has] the right to make any party . . . pay court[-]ordered attorney's fees."[62]

Turning to whether Utah Code Ann. § 75-7-1004(1) is applicable here, the court asked whether the arbitration underlying the Arbitration Award qualified under the language of the statute as "judicial proceeding."[63] Allied's counsel responded by stating: "I don't have that in front of me . . . ."[64] The court then asked Allied's counsel: "Would you agree with me that it would have to be a judicial -- an arbitration would have to be deemed a judicial proceeding under Utah law in order for your theory to carry here under this statute?"[65] After Allied's counsel agreed,[66] the court asked Allied's counsel: "Are there any definitions that you're relying on to tell us if judicial proceeding is even defined in here?"[67] Allied's counsel responded: "I do not have that in front of me . . . at this time, but I -- I would assume that there is a definition section at the beginning of 75-7."[68] After the court reviewed the relevant statutory provisions, the court noted that they did not have any definition of a "judicial proceeding."[69] Accordingly, the court

---

[62] *Id*. at 16:11-15.

[63] *Id*. at 17:6-7.

[64] *Id*. at 17:8-9.

[65] *Id*. at 17:10-13.

[66] *Id*. at 17:14.

[67] *Id*. at 17:15-17.

[68] *Id*. at 17:19-21.

[69] *Id*. at 17:24 to 18:3.

asked Allied's counsel whether the arbitration underlying the Arbitration Award "qualifies as a judicial proceeding."[70] Allied's counsel responded:

> Like I said, I don't have definitions in front of me, but I think that it is a proceeding which is binding upon the parties that has a specific procedure and process that was contractually agreed to by -- and because of that, the finality of it, the power that it holds is just equal to what a judge would render, I think that it wouldn't be a stretch to say that an arbitration, a binding arbitration such as the one that took place in that London arbitration court, would qualify under that definition of a judicial proceeding.[71]

Finally, the court turned to the issue of whether it could even award attorney's fees in this case under Utah law.[72] The court noted:

> Typically, if you're dealing with a contract, under Utah law[,] attorney's fees are allowed under that contract if they -- if the contract contains an attorney's fees clause.
>
> And if that's the case, my recollection of Utah law is that those attorney's fees are deemed to be part of the damages of that contract or the breach of that contract.[73]

The court then asked Allied's counsel: "Was the contract at issue or the insurance policy at issue? Did it have a mutual attorney's fees clause in it?"[74] After looking through the contract, Allied's counsel stated: "I do not see any provision of such . . . ."[75] Accordingly, the court asked Allied's counsel for the authority under which the London arbitration board imposed attorney's fees.[76]

---

[70] *Id*. at 18:9-10.

[71] *Id*. at 18:11-20.

[72] *Id*. at 19:1-3.

[73] *Id*. at 19:3-9.

[74] *Id*. at 19:10-11.

[75] *Id*. at 19:15-16.

[76] *Id*. at 19:21-22.

Allied's counsel responded that the attorney's fee award was "[b]ased on the British rule that the prevailing party also prevails on attorney's fees."[77] The court then asked Allied's counsel: "[W]ould I need to look to British law to determine whether it's applicable to non-trust assets as well?"[78] Allied's counsel responded: "That would be a fair assumption, yes."[79]

In response, counsel for Bank of Utah as Trustee argued that the court did not have personal jurisdiction over Bank of Utah in its individual capacity because it was not a party to the arbitration underlying the Arbitration Award and, therefore, is not a party to this case.[80] Thereafter, the court asked Allied's counsel for a response to Bank of Utah as Trustee's argument.[81] Allied's counsel replied: "I don't have an adequate response . . . ."[82]

At the conclusion of the hearing, the court granted Bank of Utah as Trustee's motions and quashed the Writ.[83] The court concluded that personal jurisdiction over Bank of Utah in its individual capacity was lacking.[84] Moreover, Allied's counsel failed to show any applicable mechanism under Utah law allowing Allied to enforce the Judgment against any assets other than those held by Bank of Utah as Trustee.[85]

---

[77] *Id*. at 20:1-2.

[78] *Id*. at 20:6-8.

[79] *Id*. at 20:9-10.

[80] *Id*. at 21:15 to 27:15.

[81] *Id*. at 27:18 to 28:4.

[82] *Id*. at 28:5-6.

[83] *Id*. at 28:8-11; *see also* ECF No. 31.

[84] ECF No. 35 at 28:11-13.

[85] *Id*. at 28:14-21.

Thereafter, the court indicated that it was considering imposing sanctions against Allied's counsel under § 1927[86] based upon their efforts to advocate a position that Chief Judge Shelby had twice rejected—namely, that Allied was entitled to collect its judgment against Bank of Utah in its individual capacity rather than only against Bank of Utah as Trustee.[87] The court voiced its concern that Allied's counsel's use of that rejected position to obtain the Writ was misleading to the court and unreasonably multiplying these proceedings.[88] The court also stated its concern that, after using that position to obtain the Writ, Allied's counsel could not identify a valid legal basis to support the position, despite having prior notice the hearing was being held to determine the validity of the Writ.[89]

At the same time, the court acknowledged that sanctions under § 1927 are limited to compensating Bank of Utah as Trustee and cannot be used to punish or deter Allied's counsel.[90]

---

[86] 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

[87] ECF No. 35 at 28:21 to 31:16.

[88] *Id*.

[89] *Id*.; *see also* Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); Utah R. Civ. P. 64E(d)(1)-(2) (governing writs of execution and providing that "[t]he defendant may reply to the writ and request a hearing . . . within 14 days after service of the writ" and that "[t]he court shall set the matter for an evidentiary hearing" to determine whether "the writ was wrongfully obtained" or seeks property "exempt from seizure," or "the writ was properly issued and the property is not exempt").

[90] ECF No. 35 at 31:3-9; *see also* 28 U.S.C. § 1927 (requiring the offending attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of" the offending attorney's conduct); *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th

Thus, the court indicated that if any sanctions were to be imposed against Allied's counsel under § 1927, they would be limited to the attorney's fees and expenses Bank of Utah as Trustee incurred in filing its two motions and the fees for one attorney's time at the hearing.[91]

The court also acknowledged that it was required to provide Allied's counsel with notice and an opportunity to be heard before imposing sanctions under § 1927.[92] Accordingly, the court ordered the parties to submit simultaneous briefs of no more than 10 pages on or before September 8, 2022, on the issue whether § 1927 sanctions should be imposed against Allied's counsel.[93] The court indicated that, once it considered the parties' briefs, it would determine that issue. On August 30, 2022, the court issued a Memorandum Decision and Order memorializing its rulings from the August 25, 2022 hearing.[94]

---

Cir. 2008) ("[T]he text of § 1927 . . . indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders.").

[91] ECF No. 35 at 31:3-9.

[92] *Id*. at 30:13-21; *see also Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1279 (10th Cir. 2005) (considering a sanctions award under § 1927 and providing that "'[t]he basic requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond'" (quoting *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987)) (en banc)).

[93] ECF No. 35 at 30:13-21; *see also Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995) ("A party facing the possible assessment of costs, expenses or attorney fees has a due process right to notice that such sanctions are being considered by the court and a subsequent opportunity to respond. . . . An opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." (citing *Braley*, 832 F.2d at 1514)); *White v. Gen. Motors Corp.*, 908 F.2d 675, 686 (10th Cir. 1990) ("*Braley* clearly held that an opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to fully brief the issue is sufficient to satisfy due process requirements." (citing *Braley*, 832 F.2d at 1515)).

[94] ECF No. 32.

As required by the court's oral ruling and that Memorandum Decision and Order, Bank of Utah as Trustee submitted its brief on the issue of § 1927 sanctions on September 8, 2022.[95] In its brief, Bank of Utah as Trustee requests a sanctions award of $10,517.00. Also on September 8, 2022, Allied's counsel filed their brief, in which they argue that the court should not award any § 1927 sanctions.[96] At the court's request, a transcript of the August 25, 2022 hearing was prepared, and it was filed in this case on October 12, 2022.[97]

**ANALYSIS**

The court has carefully considered the parties' prior filings in this case, the prior orders entered in this case, the transcript of the August 25, 2022 hearing, the briefs on the issue of § 1927 sanctions, and the relevant law. Now being fully advised, the court: (I) imposes § 1927 sanctions against Allied's counsel, and (II) orders Allied's counsel to brief the issue of the amount of the sanctions award. Each issue is discussed in order below.

**I.    The Court Imposes § 1927 Sanctions Against Allied's Counsel.**

The court imposes § 1927 sanctions against Allied's counsel for their conduct in connection with the Writ. Under § 1927, a court may impose sanctions against counsel who "multipl[y] the proceedings in any case unreasonably and vexatiously."[98] More specifically, § 1927 sanctions may be imposed against counsel who, among other things: (1) "intentionally act without a plausible basis"; (2) engage in "conduct that, viewed objectively, manifests either

---

[95] ECF No. 33.

[96] ECF No. 34.

[97] ECF No. 35.

[98] 28 U.S.C. § 1927; *see also Hamilton*, 519 F.3d at 1205 (providing that § 1927 was designed "to compensate victims of abusive litigation practices").

16

intentional or reckless disregard of [counsel]'s duties to the court"; (3) act "recklessly or with indifference to the law"; (4) engage in conduct that is "bent on misleading the court"; (5) "act[] in the teeth of what [counsel] knows to be the law"; (6) "seek[] to resurrect matters concluded" or "seek[] to relitigate issues already adjudicated"; or (7) "repeat[] arguments previously rejected by the court."[99] Under those principles, the court imposes § 1927 sanctions against Allied's counsel because: (A) there is no plausible, good-faith basis to collect the Judgment from Bank of Utah in its individual capacity; (B) their application for the Writ was misleading to the court; and (C) they relied upon arguments previously rejected to resurrect the conclusively determined issue of whether Bank of Utah in its individual capacity is liable for the Judgment. The court addresses each issue in turn.

A. Allied's Counsel Acted Without a Plausible Basis When Seeking to Enforce the Writ Against Bank of Utah in Its Individual Capacity.

Allied's counsel lacked any plausible legal basis to collect assets from Bank of Utah in its individual corporate capacity. The capacity under which Bank of Utah is acting is crucial to determining which assets are available to satisfy the Judgment. By illustration, in *Ace Investors*, the plaintiff filed an action in the District of Utah against the defendant, as trustee of an irrevocable stock trust ("Stock Trust").[100] In addition to being the trustee of the Stock Trust, the defendant was the trustee of an irrevocable marital trust ("Marital Trust") and an irrevocable realty trust ("Realty Trust").[101] The plaintiff sought to collect on a $1 million promissory note

---

[99] *Braley*, 832 F.2d at 1511-13 (quotations and citations omitted); *see also Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).

[100] *Ace Investors*, 494 F. App'x at 857.

[101] *Id.*

from the Stock Trust.[102] The defendant, in her capacity as trustee of the Stock Trust, stipulated to

entry of judgment against the Stock Trust.[103] Later, the plaintiff applied for writs of garnishment

to be served on the Marital Trust and the Realty Trust, seeking to garnish property of the Stock

Trust that might be held in either the Marital Trust or the Realty Trust that could be used to

satisfy the judgment against the Stock Trust.[104] The Marital Trust and the Realty Trust were New

York trusts, and their trustee, the defendant, lived in New York.[105] Upon being served with the

writs of garnishment, counsel for the Marital Trust and the Realty Trust entered a special

appearance objecting to the writs, arguing, among other things, that the Marital Trust and Realty

Trust were not subject to personal jurisdiction in Utah.[106] The plaintiff then moved for various

forms of relief, including an order restraining the defendant from taking any action with respect

to the property of the Stock Trust, the Marital Trust, or the Realty Trust.[107]

  The district court concluded that it had personal jurisdiction over the defendant

individually, and, therefore, it had jurisdiction over the Stock Trust, the Marital Trust, and the

Realty Trust.[108] Accordingly, the district court granted the plaintiff's request for the order of

restraint.[109] The Marital Trust and the Realty Trust appealed the district court's ruling.[110]

---

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.* at 857-58.

[109] *Id.*

[110] *Id.* at 858.

On appeal, the Marital Trust and the Realty Trust argued that the district court erred by concluding that it had personal jurisdiction over them.[111] The Marital Trust and the Realty Trust acknowledged that the district court had specific personal jurisdiction over the defendant in her capacity as trustee of the Stock Trust.[112] At the same time, the Marital Trust and the Realty Trust argued that the district court did not have general personal jurisdiction over the defendant as an individual or specific personal jurisdiction over the defendant in her capacity as trustee of the Marital Trust and the Realty Trust.[113]

The Tenth Circuit agreed with the Marital Trust and the Realty Trust's argument, concluding that "the district court's personal jurisdiction determination [was] contrary to Utah law."[114] Citing Utah Code Ann. § 75-7-1010, the court noted that "Utah draws a distinction between a person acting in an individual capacity, on the one hand, and, on the other, that same person acting in the capacity of a trustee."[115] Thus, the court concluded that it "must focus on the particular capacity in which a party is being sued in determining whether it has personal jurisdiction."[116] The court determined that the defendant had four distinct capacities: her personal capacity, her representative capacity as the trustee of the Stock Trust, her representative capacity as the trustee of the Marital Trust, and her representative capacity as the trustee of the Realty

---

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Id.* at 859.

[115] *Id.*

[116] *Id.*

Trust.[117] Recognizing those distinctions, the court concluded that it was improper for the district court to "rely on its specific personal jurisdiction over [the defendant] in her capacity as the trustee of the Stock Trust to exercise specific personal jurisdiction over [the defendant] in her capacity as the [t]rustee for the Marital and Realty Trusts."[118] Consequently, the court concluded that "the district court may not order [the defendant] to restrain the assets of the Stock Trust that may be held in the Marital and Realty Trusts when it does not have jurisdiction over her in her representative capacity as the trustee for those trusts."[119] Based upon those conclusions, the court reversed the district court's decision and remanded the case with instructions to vacate the order of restraint entered against the Marital Trust and the Realty Trust.[120]

Because capacity matters, Bank of Utah as Trustee is not the same entity as Bank of Utah as a corporate individual. Accordingly, each entity owns assets independently of the other, which means that Allied must rely on one of the limited available legal mechanisms to subject the assets of Bank of Utah in its individual capacity to paying the debts of Bank of Utah as Trustee. This showing is not easy because the default rule in Utah is that a trustee is not personally liable for the dealings of the trust unless the trustee is "personally at fault."[121] One of the ways that a trustee may be "personally at fault" is if a trustee takes actions that would make him/her the alter ego or nominee of the debtor trust, which subjects the trustee's personal assets to collection for

---

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.* at 859-60.

[121] Utah Code Ann. § 75-7-1010(2).

paying for the trust's debts.[122] However, Allied's counsel never presented any evidence at the hearing on the Writ to establish that Bank of Utah is in its individual capacity is "personally at fault" for the conduct resulting in the Arbitration Award or was the alter ego or nominee of Bank of Utah as Trustee.

Instead, Allied's counsel argued that the court had the discretion to make the Judgment collectable against Utah Bank in its individual capacity under Utah Code Ann. § 75-7-1004. Section 1004 allows a court "[i]n a judicial proceeding" to award attorney's fees "to any party, to be paid by another party or from the trust that is the subject of the controversy."[123] Allied's counsel reasoned that the arbitration underlying the Arbitration Award was akin to a "judicial proceeding," and, therefore, Allied (as a party to the Arbitration Award) may receive the attorney's fees (which is the entirety of the Arbitration Award) from Bank of Utah in its individual capacity because it is "another party."

This reading is frivolous. Assuming without deciding that Allied's counsel are correct in their argument that an arbitration is a "judicial proceeding," Bank of Utah in its individual capacity is not and has never been a "party." When interpreting a statute, the court begins with the plain language of the statute.[124] To determine a word's plain meaning, the court can consult a

---

[122] *See, e.g.*, *ANR Ltd. Inc. v. Chattin*, 89 B.R. 898, 903 (D. Utah 1988) (stating that "a successful alter ego action results in a finding that the defendants are personally liable for all corporate debts").

[123] Utah Code Ann. § 75-7-1004(1).

[124] *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991) ("As in any case of statutory interpretation, we begin with the plain language of the law. If the statutory language is clear, this will ordinarily end the analysis."); *Hercules Inc. v. Utah State Tax Comm'n*, 2000 UT App 372, ¶ 9, 21 P.3d 231 ("[I]n construing any statute, we first examine the statute's plain language and resort to other methods of statutory interpretation, only if the language is ambiguous.

dictionary.[125] In this context, Black's Law Dictionary defines the term "party" as "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment."[126] Thus, under a plain-language reading, section 1004(1) allows a court presiding over a "judicial proceeding" to award attorney's fees *to* one of the entities by or against whom a lawsuit is brought *from* one of the entities by or against whom a lawsuit is brought.

Indeed, the text of section 1004(1) itself clearly reflects this meaning of "party." Section 1004(1) governs a judge's authority in a "judicial proceeding." A "judicial proceeding" is between one who brings a lawsuit (i.e., plaintiff or petitioner) and one against whom a lawsuit is brought (i.e., defendant or respondent) in addition to those who exercise some control over the proceeding because of their interest in the proceeding's subject matter (i.e., intervenors). In other words, those participating in a "judicial proceeding" are "parties" that a judge can order to pay attorney's fees. Thus, the plain language definition of "party" seems to apply to section 1004(1).

Interpreting the word "party" to include entities who are not part of the "judicial proceeding" is untenable. For example, it violates the cannon of statutory construction that terms

---

Accordingly, we read the words of a statute literally . . . and give the words their usual and accepted meaning." (alterations in original) (quotations and citations omitted)).

[125] *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We may consult a dictionary to determine the plain meaning of a term."); *Hercules Inc.*, 2000 UT App 372, at ¶ 9 ("When a statute fails to define a word, we rely on the dictionary to divine the usual meaning." (quotations and citations omitted)).

[126] *Party*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009) ("A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'" (alteration in original) (quoting BLACK'S LAW DICTIONARY 1154 (8th ed. 2004))).

should be interpreted consistently throughout the statute.[127] If Allied's counsel are correct, then the court in a judicial proceeding may award attorney fees to a "party" (i.e., someone participating in the judicial proceeding) from another "party" (i.e., anyone not participating in the judicial proceeding). "Party" cannot carry two vastly different meanings in the same sentence of section 1004(1).

Additionally, and even worse than violating the cannon of statutory construction precluding multiple meanings of the same term, is the fact that Allied's counsel's double-meaning of "party" would also violate the cannon of construction that precludes reading a statute in a way that would violate the United States Constitution. "[C]ourts should, if possible, interpret ambiguous statutes to avoid rendering them unconstitutional . . . ."[128] If "party" could mean what Allied's counsel suggests here, a court could order some entity outside of the litigation—who has never been served with any process subjecting it to the court's jurisdiction— to pay attorney's fees to someone in the litigation. Such an order would clearly violate the Constitution's Due Process Clauses under either the Fifth or Fourteenth Amendments.[129] Thus, the word "party" in section 1004(1) must assume its common, plain meaning, which renders baseless Allied's counsel's interpretation of "party."

Given that "party" under section 1004(1) is limited to the litigants in the "judicial proceeding," Allied's counsel had no good-faith, factual basis to assert that Bank of Utah in its

---

[127] *Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 860 (1986) (holding that "[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning" (quotations and citations omitted)).

[128] *United States v. Davis*, 139 S. Ct. 2319, 2332 n.6 (2019).

[129] *See, e.g.*, *Pennoyer v. Neff*, 95 U.S. 714, 736-37 (1877) (holding that absent service of the summons and complaint, the defendant was deprived of "due process of law").

individual capacity is a "party" to either the underlying arbitration or to the enforcement of the Judgment. For starters, the insurance policy that was subject of the arbitration clearly did not include Bank of Utah in its individual capacity at all; it applied only to Bank of Utah as Trustee. Not surprisingly, the Arbitration Award itself did not include Bank of Utah in its individual capacity but only in its capacity as Trustee. Allied's own motion to enforce the Arbitration Award was brought against Bank of Utah as Trustee, which Chief Judge Shelby recognized in two separate instances. In fact, Chief Judge Shelby stated that "[n]othing in [Allied's] Motion to Enforce supports the inference that Allied is seeking judgment against Bank of Utah in its individual capacity" and that he "construe[d] the Motion to Enforce as directed against Bank of Utah in its capacity as a trustee."[130] In the subsequent dispute about the content of the judgment to be entered, Allied argued that the court should "rule that Allied . . . is not constrained to enforce the [judgment] only against assets of the Bank of Utah held or traceable to the subject trusts" and that Allied "should be permitted to enforce the [j]udgment against available non-trust assets of Bank of Utah."[131] After considering those arguments, Chief Judge Shelby entered the Judgment, which states that it was "entered in this matter in favor of [Allied] against . . . Bank of Utah in its capacity as Owner Trustee of the MSN53519 and MSN5320 Trusts."[132]

Despite this clear ruling (for the second time) that the Judgment was not against Bank of Utah in its individual capacity, Allied's counsel contend that the fact that Chief Judge Shelby failed to expressly *exclude* Bank of Utah in its individual capacity from the Judgment opened the

---

[130] ECF No. 11 at 2.

[131] ECF No. 16 at 5 of 6.

[132] ECF No. 18 at 3.

door to argue that Bank of Utah's individual corporate assets were available for collection. This argument is nonsensical. When a court issues a judgment against a party, it does not need to list the billions of individuals and entities around the world that are *not* subject to the judgment because they never were parties to the litigation that produced the judgment. If Allied's counsel's argument were the law, then any creditor could randomly select some unnamed individual or entity, seek a writ of execution against that individual or entity's assets, and argue that because the judgment did not expressly exempt that individual or entity's assets, there is a good-faith argument that those assets are available to satisfy the judgment. There is no plausible basis for such an argument. Therefore, Allied's counsel had no plausible legal or factual basis to argue that Bank of Utah in its individual capacity was subject to paying the attorney's fees that Bank of Utah as Trustee owed under the Judgment. This warrants sanctions under § 1927.

      B.  <u>Allied's Counsel's Application for the Writ Was Misleading to the Court</u>.

      Given that Allied's counsel had no factual or legal basis to subject the assets of Bank of Utah in its individual capacity to pay the debts of Bank of Utah as Trustee, Allied's counsel misled the court by filing the application for the Writ. Allied's counsel were clearly aware of Chief Judge Shelby's rulings stating that Bank of Utah in its individual capacity was not a party to the enforcement action. Moreover, Allied's counsel could not plausibly read Utah Code Ann. § 75-7-1004(1) to conclude that a non-party (i.e., Bank of Utah in its individual capacity) could be ordered to pay attorney's fees for a party (i.e., Bank of Utah as Trustee). And Allied's counsel presented no other legal argument that would allow the assets of Bank of Utah in its individual capacity to be used to satisfy the debts of Bank of Utah as Trustee. In other words, Allied's

counsel knew or clearly should have known that they had no plausible basis to request the Writ for Bank of Utah in its individual capacity. This is sanctionable conduct under § 1927.

    C.  <u>Allied's Counsel Relied Upon Arguments Previously Rejected to Resurrect the Conclusively Determined Issue of Whether Bank of Utah in Its Individual Capacity Is Liable for the Judgment</u>.

Allied had a full and fair opportunity to litigate the issue of whether Bank of Utah in its individual capacity should be liable for the Judgment. However, rather than accepting Chief Judge Shelby's rulings, Allied's counsel relied upon arguments that had already been rejected to resurrect that issue.

In its motion to dismiss or, in the alternative, to transfer venue, Bank of Utah argued that Allied's motion to enforce should be dismissed because, among other reasons, Utah law precluded enforcement of the Arbitration Award against Bank of Utah in its individual capacity.[133] Allied responded to those arguments in both its opposition to Bank of Utah's motion[134] and its reply memorandum concerning the language of the proposed judgment.[135] In both instances, Allied argued that Utah Code Ann. § 75-7-1010 and *Ace Investors* did not support Bank of Utah's argument, and, therefore, Allied should be permitted to enforce the Arbitration award against Bank of Utah in its individual capacity. After considering the parties' arguments, Chief Judge Shelby construed Allied's motion to enforce as being brought only against Bank of Utah as Trustee[136] and entered the Judgment against only Bank of Utah as Trustee.[137]

---

[133] ECF No. 4.

[134] ECF No. 7.

[135] ECF No. 16.

[136] ECF No. 11.

[137] ECF No. 18.

Importantly, the same issues were covered at the August 25, 2022 hearing. Allied's counsel stated that the "main reason" upon which Allied was relying to enforce the Judgment against Bank of Utah in its individual capacity was that Utah Code Ann. § 75-7-1010 did not apply in this case.[138] Additionally, after Bank of Utah as Trustee raised the central issue from *Ace Investors* (i.e., the lack of personal jurisdiction over Bank of Utah in its individual capacity), the court asked Allied's counsel for a response, to which he replied: "I don't have an adequate response . . . ."[139] Such a course of action demonstrates that Allied's counsel were seeking nothing more than another chance to resurrect the same issues that Chief Judge Shelby had considered and decided.[140] Allied counsel's decision to pursue that course of action, when considered with Allied's counsel's other conduct in connection with the Writ, is sanctionable under § 1927.

## II.   The Court Orders Allied's Counsel to Brief the Issue of the Amount of the § 1927 Sanctions Award.

By permitting the parties to file simultaneous briefs on the issue of *whether* § 1927 sanctions should be imposed against Allied's counsel, the court provided Allied's counsel with the required notice and an opportunity to be heard on that issue. Although the court has determined that such sanctions will be imposed, it has not given Allied's counsel the requisite

---

[138] ECF No. 35 at 7:2-6.

[139] *Id*. at 28:5-6.

[140] As stated above, at the August 25, 2022 hearing, Allied's counsel also raised the issues of the applicability of British law and Utah Code Ann. § 75-7-1004. As to the former issue, when questioned on multiple occasions, Allied's counsel was unable to provide any legal authority for the application of British law. With respect to the latter issue, Allied's counsel's reliance upon and interpretation of Utah Code Ann. § 75-7-1004 was not plausible, as discussed above.

notice and an opportunity to be heard on the *amount* of the sanctions award.[141] Accordingly, the court orders Allied's counsel to file a brief of no more than 10 pages on or before February 20, 2023, addressing the reasonableness of the amount of Bank of Utah as Trustee's requested sanctions award. After the court considers Bank of Utah as Trustee's request and Allied's counsel's brief, the court will determine the amount of the § 1927 sanctions award.

### ORDER

Based upon the foregoing analysis, the court HEREBY ORDERS:

1. Sanctions are imposed under § 1927 against Allied's counsel and in favor of Bank of Utah as Trustee.

2. On or before February 20, 2023, Allied's counsel shall file a brief of no more than 10 pages addressing the reasonableness of the amount of Bank of Utah as Trustee's requested sanctions award.

3. After the court considers Bank of Utah as Trustee's request and Allied's counsel's brief, the court will determine the amount of the § 1927 sanctions award.

DATED this 6th day of February 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[141] *White,* 908 F.2d at 686 (affirming district court's determination that sanctions were appropriate but remanding and requiring that the district court "insure that plaintiffs receive enough detail to respond intelligently in writing to the reasonableness of the requested fees" because "an adequate opportunity to respond to an attorney's fee request requires that the persons to be sanctioned be provided enough detail concerning the basis of the requested fees to permit an intelligent analysis").